IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SHANNON LAMONT DANIELS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 3:11-CV-45 (CAR) |
| | : | |
| WADE HARRIS, *et al.*, | : | |
| | : | Proceeding Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

### RECOMMENDATION

Before the Court is an unopposed Motion for Summary Judgment filed by Defendants Wade Harris and Walton County. Doc. 24. Plaintiff's 42 U.S.C. § 1983 action challenges the Walton County Jail's policy requiring that all inmate non-legal mail be sent via postcards. Because Plaintiff's claims against Defendant Walton County are based on the theory of *respondeat superior*, which are not actionable under Section 1983, Walton County is entitled to judgment as a matter of law. Additionally, Defendant Harris is entitled to qualified immunity against Plaintiff's claims for damages. To the extent that Plaintiff seeks injunctive relief, Plaintiff has failed to show that there are easier, less-restrictive alternatives to the WCJ's postcard-only mail policy. Accordingly, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

### PROCEDURAL HISTORY

On March 22, 2011, Plaintiff Shannon Lamont Daniels, proceeding *pro se*, filed the above-captioned action pursuant to 42 U.S.C. § 1983 alleging various claims of false imprisonment and double jeopardy violations against numerous judicial employees, parole board members, and prison officials. Doc. 1. Among these other claims, Defendant also alleged that the

1

Walton County Jail's (WCJ) postcard-only mail policy is unconstitutional. Specifically, Plaintiff alleged that Defendants Walton County and Harris unconstitutionally limited his ability to communicate with the public and his family through the United States Mail by instituting and enforcing a policy that limits inmates' outgoing and incoming mail to the use of a 6" x 4" postcard. Pl.'s Supp. Comp. (Doc. 12).

Following a frivolity review of Plaintiff's Compliant pursuant to 28 U.S.C. § 1915A, the Court dismissed all of Plaintiff's claims except for Plaintiff's claims against Defendants Walton County and Harris regarding the WCJ's postcard-only mail policy. Doc. 14. On November 14, 2011, after the close of discovery, Defendants filed the instant Motion for Summary Judgment along with an affidavit in support of their motion. Docs. 24, 24-2. Upon receipt of the motion, the Court directed Plaintiff to file a response within twenty-one (21) days. Doc. 42.

To date, no response has been filed. Consequently, it appears that Plaintiff has abandoned his claims. Nevertheless, before entering summary judgment for Defendants, the Court must ensure that summary judgment is warranted under Rule 56 of the Federal Rules of Civil Procedure.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the burden of establishing the absence of a dispute over a material fact. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993). The evidence and factual inferences made from the evidence are viewed favorably to the party opposing summary judgment. Reynolds, 989 F.2d at 469.

The moving party must meet its burden even if the non-moving party fails to respond to a motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of an unopposed motion for summary judgment, a court:

> need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

Id. at 1101-02. In other words, the court cannot simply accept the facts stated in a moving party's statement of material facts as true, but must also review the movant's citations to the record and confirm that there are no issues of material fact. Id. at 1103 n. 6. Pursuant to Rule 56(c), the court "need consider only the cited materials, but it may also consider other materials in the record."

## FACTUAL BACKGROUND

Because Plaintiff has failed to file any response in opposition to Defendants' Motion for Summary Judgment, the Court accepts as accurate and relies upon the assertions contained within the Defendants' evidence submitted in support of their motion. The Court must nevertheless view this evidence in the light most favorable to Plaintiff.

In August 2010, Plaintiff was arrested in Walton County for disorderly conduct. Doc. 1. Following Plaintiff's subsequent convictions for disorderly conduct and violating the terms of his parole, Plaintiff was transferred from the WCJ to the McEver Probation Detention Center to begin serving his sentence. Id.  On May 25, 2011, Plaintiff was released from the McEver Probation Detention Center and returned to his home address in Hampton, Georgia. Doc. 18.

At all times related to Plaintiff's Complaint, Defendant Harris was the jail commander for the WCJ. Harris Aff. (Doc. 24-2). Defendant Harris' duties included administering and enforcing WCJ policies, maintaining and ensuring security and safety within the WCJ, and maintaining discipline and rehabilitation among the inmates at the WCJ. Id.

On November 1, 2010, Defendant Harris instituted a new policy that requires all outgoing and incoming mail between inmates and citizens to be mailed via postcards. Id.; WCJ Memo (Doc. 24-2). The postcard-only mail policy does not apply to any legal correspondence. Id. In his affidavit, Defendant Harris explains that inmates are allowed to purchase as many postcards as they wish to communicate with the public. Harris Aff. (Doc. 24-2). Defendant Harris states that the postcard-only mail policy is necessary to combat issues that the WCJ faces regarding inmates obtaining contraband from outside the prison. Id. Defendant Harris testifies that inmates often wrote letters soliciting contraband from friends and family outside the WCJ. Id. According to Defendant Harris, several inmates wrote letters to friends asking them to meet them at specific locations at the WCJ to give them contraband, including drugs. Id. Defendant Harris states that inmates would write lengthy letters and bury the request for contraband somewhere within the body of the letter to avoid being discovered during the mail screening process. Id. Defendant Harris asserts that the policy assists jailers with screening mail for contraband requests, escape plans, and other potential criminal activity. Id.

## DISCUSSION

Plaintiff contends that the post-card only mail policy violates his First Amendment right to communicate with the public. Liberally construing Plaintiff's Complaint, Plaintiff asserts claims against Walton County and claims against Defendant Harris in both his official and individual capacities. Plaintiff also requests that the Court find the postcard-only mail policy

unconstitutional. Because Plaintiff's claims against Walton County are based on *respondeat superior*, Walton County is entitled to judgment as a matter of law. Additionally, Defendant Harris is protected by Eleventh Amendment immunity in his official capacity and qualified immunity in his individual capacity against Plaintiff's claims for damages. Further, because Plaintiff has failed to meet his burden requiring him to show that there are obvious, easy alternatives to the postcard-only mail policy, Plaintiff has failed to establish that he is entitled to injunctive relief.

### Defendant Walton County

The United States Supreme Court has placed strict limitations on municipal liability under Section 1983. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). One of these limitations is that a Section 1983 suit against a county cannot be based on the theory of *respondeat superior*. Id.; Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003). Because counties in Georgia have no authority over a sheriff's law enforcement functions, counties are not liable for the actions committed by the sheriff or his deputies in performing law enforcement activities. Grech, 335 F.3d at 1336-37.

In this case, Defendant Harris was employed by the Walton County Sheriff's Office as the jail commander for the WCJ. Because Plaintiff's claim is based on the postcard-only mail policy instituted by Defendant Harris, Defendant Walton County cannot be held liable and is entitled to judgment as a matter of law.

### Defendant Harris

Defendant Harris asserts that qualified immunity and Eleventh Amendment immunity protect him from Plaintiff's claims. It is well established that qualified immunity can protect government officials from civil damages liability. Anderson v. Creighton, 483 U.S. 635, 641

(1987); Fortner v. Thomas, 983 F.2d 1024, 1028. Qualified immunity, however, does not protect a government official from an inmate's Section 1983 lawsuit insofar as the inmate seeks injunctive relief. Fortner, 983 F.2d at 1029. Additionally, although a government official is generally protected from suit in his official capacity, an inmate may bring a Section 1983 action against a government official in his official capacity for injunctive relief. Miller v. King, 384 F.3d 1248, 1260 (11th Cir. 2004) (vacated on other grounds).

Defendant Harris is entitled to qualified immunity against Plaintiff's claims for damages because the WCJ's postcard-only mail policy does not violate clearly established federal law. Qualified immunity protects government officials from civil liability when their conduct in performing discretionary functions "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (internal quotations omitted). To determine if a defendant was performing a discretionary function, the court must look to whether the government employee was preforming a job related function through means that were within his power. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). As the jail commander at the WCJ, Defendant Harris was performing a discretionary function when he instituted the postcard-only mail policy.

A prison employee acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Courts need not consider the two prongs of the analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id.

Leaving aside at this point whether the postcard-only mail policy violates Plaintiff's constitutional rights, Defendant Harris is entitled to qualified immunity because there is no law that clearly establishes that a postcard-only mail policy violates inmates' First Amendment rights. Although courts have held generally that a jail or prison policy must be "reasonably related to a legitimate penological interests," Turner v. Safley, 482 U.S. 78, 89 (1987), neither the Supreme Court nor the Eleventh Circuit has applied Turner or any other legal standard in the context of a postcard-only mail policy. As such, qualified immunity protects Defendant Harris against Plaintiff's claims for damages.

Turning now to the issue of whether the postcard-only mail policy violates Plaintiff's First Amendment rights, Plaintiff has failed to present any evidence of an easier, less restrictive alternative to the policy. As such, Plaintiff has failed to establish that the postcard-only mail policy violates his constitutional rights, and Plaintiff is not entitled to injunctive relief.

The First and Fourteenth Amendments guarantee protection against unjustified governmental interference with communications. Lamont v. Postmaster General, 381 U.S. 301 (1965). An inmate does not lose his First Amendment rights simply by means of his incarceration. See, e.g., Cruz v. Beto, 405 U.S. 319 (1972). "Prison walls do not form a barrier separating prison inmates for the protections of the Constitution, nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the inside." Thornburgh v. Abbot, 490 U.S. 401, 407 (1989) (internal quotations omitted). Inmates' First Amendment rights, however, must be exercised in view of the difficult task that is modern prison administration. Id.

As the Eleventh Circuit recently discussed in Perry v. Florida Department of Corrections, 644 F.3d 1359 (11th Cir. 2011), resolving a First Amendment issue regarding a prison or jail

7

mail policy depends on which legal standard is applied to speech in prisons. 644 F.3d at 1364. The Supreme Court has created two possible standards for First Amendment cases involving the free speech of prisoners and nonprisoners attempting to contact one another. Id.

The first standard was stated in Procunier v. Martinez, 416 U.S. 396 (1794), which involved both incoming and outgoing non-legal prison mail. Martinez held that censorship of prisoner mail is justified if (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression," and (2) "the limitation of First Amendment freedoms [is] no greater than is necessary…to the protection of the particular government interest." 416 U.S. at 413. Following Martinez, however, the Supreme Court decided a series of cases eroding the high standard in order to show greater deference to prison administrators.[1]

The Supreme Court formulated a second standard in Turner v. Safley, 482 U.S. 78, 89 (1987), setting out a series of factors to assist courts in determining the reasonableness of a prison regulation. Turner, 482 U.S. at 89-90. The Turner factors include: (1) whether there is "a valid, rational connection between the regulation and the prison legitimate government interest;" (2) "whether there are alternative means of exercising the right;" (3) "the impact [that the] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources;" and, (4) the existence of easy, less restrictive alternatives, which show that the regulation is an "exaggerated response to prison concerns." Id. (citations

---

[1] In Perry, the Eleventh Circuit detailed the shifting of the standard. 664 F.3d at 1364-65. Shortly after Martinez, the Supreme Court held that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). The Supreme Court then used the Pell standard to recognize the "wide-ranging deference to be accorded the decision of prison officials." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977). In Bell v. Wolfish, the Supreme Court developed four general principles regarding inmates' constitutional rights: (1) inmates do not forfeit all constitutional protections; (2) although certain rights are retained, those rights are still subject to restrictions and limitations, (3) those retained rights may be limited in order to maintain institutional security and order; and, (4) courts should accord wide ranging deference to prison administrators. 441 U.S. 520, 545-47 (1979).

8

and internal quotations omitted). In Thornburgh, the Supreme Court limited Martinez to regulations involving outgoing mail and held that regulations involving incoming mail must be analyzed under the lesser Turner standard. Thornburgh, 490 U.S. 401, 413-14.

More recently, the Eleventh Circuit has distinguished Martinez and analyzed an outgoing mail policy under the Turner standard. Perry v. Florida Department of Corrections, 664 F.3d at 1365.[2] In doing so, the Eleventh Circuit noted that "[a]lthough two standards exist to determine when a violation of the First Amendment occurs within the prison context, the Martinez standard was only applied once by the Supreme Court—in Martinez itself. Since Martinez, the Court has always applied a more rationally based scrutiny to determine whether the First Amendment is violated in the prison context." Id.

Based on the Eleventh Circuit's rationale in Perry, this case must also be analyzed under the Turner standard. The WCJ's postcard-only mail policy applies to both incoming and outgoing mail. The policy as it affects incoming mail must be analyzed under the Turner reasonableness standard. See Thornburgh, 490 U.S. at 413. Additionally, as in Perry, the outgoing correspondence in this case is distinguishable from the correspondence in Martinez. "The personal correspondence in Martinez 'did not, by its very nature, pose a serious threat to prison order and security.'" Perry, 664 F.3d at 1365 (quoting Thornburgh, 490 U.S. at 411). In this case, Defendant Harris testifies that the outgoing correspondence poses a direct threat to internal prison security because inmates write lengthy letters and bury requests for contraband somewhere within the body of the letter to avoid being discovered during the mail screening process. Defendant Harris states that these requests included inmates asking friends and family to meet them at a specific location at the WCJ to give the inmates contraband. Accordingly, Turner is the appropriate standard in this case.

---

[2] Like this case, the mail policy in Perry involved both incoming and outgoing mail.

9

Turner establishes a four-factor analysis to determine whether a jail or prison regulation limiting First Amendment protections is reasonably related to a legitimate penological interest. The first factor requires the official to show that there is a rational connection between the regulation and the legitimate penological objective. Turner, 482 U.S. at 89. Legitimate penological objectives include security, order, and rehabilitation. Martinez, 416 U.S. at 413. In this case, Defendant Harris has shown a rational connection between the postcard-only mail policy and the WCJ's concerns regarding contraband. Defendant Harris testifies that WCJ has encountered several problems with inmates receiving contraband from outside the prison. Because requests for contraband were buried inside of lengthy letters, the postcard-only mail policy assists in maintaining order and security by reducing the inmates' ability to hide contraband request within letters to their family and friends.

The second factor requires courts to determine if there are alternative means for the inmates to exercise the protected right. Id. at 90. In this case, there is no evidence in the record regarding the WCJ's policy involving inmates' various means of communicating with the public. Although many jails have policies regarding visitation and phone calls, the Court cannot draw any conclusions regarding these alternative means without evidence of the WCJ's policies. Regarding inmates' ability to send mail to the public, Defendant Harris states that the inmates can purchase as many postcards as they please and that there is no limit on the number of postcards an inmate may send. As such, inmates still have a means to communicate with the public via postcards.

The third factor requires courts to evaluate the impact of the regulation on guards, inmates, and prison resources. Id. In this case, Defendant Harris states that the postcard-only mail policy assists jailers with screening mail for contraband requests, escape plans, and other

potential criminal activity. Reducing the burden of the screening process also aids jailers in allocating resources needed to accomplish other responsibilities that ensure a safe and secure jail.

The forth factor requires courts to determine whether the regulation is an exaggerated response to the WCJ's problem regarding inmates' receiving contraband at the jail. See id. at 90-91. To show that the regulation is an exaggerated response, the inmate must point to an easier, less-restrictive alternative that fully accommodates the inmates' right "at *de minimis* cost to valid penological interest." Id. at 91. The inmate, not the official, carries the burden of demonstrating alternative methods to accommodate the inmate's constitutional complaint. Id. at 90-91; O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987) (the burden is not on the prison officials to disprove the availability of alternatives). Although it is conceivable that easier, less-restrictive alternatives exist that could effectively curtail the problem with inmates soliciting contraband from family and friends, Plaintiff has failed to present even one alternative. As such, Plaintiff has failed to meet his burden of showing that there is an easier, less-restrictive alternative to the postcard-only mail policy that would help combat the WCJ's problems with inmates soliciting contraband.

Because Plaintiff has not presented any evidence to show that the postcard policy was an exaggerated response to legitimate concerns, the Turner factors to this case weigh in favor of Defendant Harris. Accordingly, Plaintiff has failed to establish that the WCJ's postcard-only mail policy violates his constitutional rights, and Plaintiff is not entitled to injunctive relief.

CONCLUSION

Because Plaintiff has failed to put forth sufficient evidence to establish that the WCJ's postcard-only mail policy violates his constitutional rights, and because Defendants have shown that they are entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that

Defendants' Motion for Summary Judgment be **GRANTED**. Additionally, it is hereby **ORDERED** that Defendants' Motion for Entry of Order (Doc. 27) be **DENIED** as moot. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

SO RECOMMENDED, this 8th day of August, 2012.

        s/ Charles H. Weigle_____
        Charles H. Weigle
        United States Magistrate Judge